## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ROBERTA GREENWALD** | * | |
| 16210 Lappans Road | * | |
| Williamsport, MD 21795 | * | |
| Washington County | * | |
| | * | |
| **ELIZABETH ELLIOTT** | * | |
| 17733 Timberlane | * | |
| Hagerstown, MD 21740 | * | |
| Washington County | * | |
| | * | |
| **DAMON VASS** | * | **Case No.:**<u>18-cv-227-GLR</u> |
| 11215 Youngstown Drive #706 | * | |
| Hagerstown, MD 21742 | * | |
| Washington County | * | **Jury Trial Requested** |
| | * | |
| **GRANT GEIST** | * | |
| 142 Pine Grove Road | * | **Class Action Under 26 U.S.C. § 7434** |
| Gardners, PA 17324 | * | |
| | * | |
| **RHONDA KENNEY** | * | |
| 71 Spillway Court | * | |
| Martinsburg, West VA 25405 | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **REGENCY MANAGEMENT** | * | |
| **SERVICES, LLC.** | * | |
| 7900 Cedarville Rd. | * | |
| Bradywine, MD 20613 | * | |
| <u>Serve On Resident Agent</u> | * | |
| Jonathan A. Azrael | * | |
| 5th Floor | * | |
| 101 East Chesapeake Ave. | * | |
| Baltimore, MD 21286 | * | |
| | * | |
| **ADBUL AYYAD** | * | |
| 7900 Cedarville Rd. | * | |
| Brandywine, MD 20613 | * | |
| | * | |
| **Defendants.** | * | |

*****************************************************************

## AMENDED COMPLAINT

Plaintiffs, former employees of the Defendants, Regency Management Services, LLC ("RMS"), and Abdul Ayyad ("Defendant Ayyad"), respectfully file this case because the Defendants deliberately misclassified Plaintiffs as 1099 independent contractors, submitted fraudulent tax information returns in the form of W-2s and 1099s to the Internal Revenue Service ("IRS"), and failed to pay all commissions owed and made improper deductions from Plaintiffs' wages in violation of the Maryland Wage Payment and Collection Law ("MWPCL"). Defendants engaged in this misconduct so that they would not have to pay the employer portion of FICA, FUTA and other federal and state taxes, even though the Plaintiffs and other commissioned sales personnel were W-2 employees at all times when they were employed.

Defendants' scheme worked as follows: While Plaintiffs and other sales persons were employed by Defendants, Defendants paid their commission and all other earnings as W-2 wages, less FICA, FUTA, and other federal and state income tax withholdings and issued the Plaintiff a W-2 for the applicable year.  However, if an employee earned commissions while employed by Defendants but left employment, for whatever reason, before the commission was paid, remaining commissions owed, if paid, were paid as "1099 pay", without any deductions for federal or state income taxes, including FICA and FUTA.  Accordingly, the W-2 that Defendants issued for the following year underreported the amount of earned income by Plaintiffs and all other commissioned sales personnel by excluding all 1099 paychecks issued after the employee left employment. Defendants intentionally and willfully misrepresented the amount of wages paid to Plaintiffs to avoid paying the employer portion of the FICA, FUTA, and other federal and state income taxes on paychecks issued after Plaintiffs left employment. Defendants improperly and unlawfully saved tens of thousands of dollars, if not more. Defendants appear to want to punish

Plaintiffs for leaving employment by making them solely responsible for higher federal and state income taxes, including FICA and FUTA taxes due and owing on the commissions that were earned by Plaintiffs.

## **PARTIES**

1. Plaintiff Roberta Greenwald ("Plaintiff Greenwald") is an adult resident of the State of Maryland, Washington County.

2. Plaintiff Elizabeth Elliott ("Plaintiff Elliott") is an adult resident of the State of Maryland, Washington County.

3. Plaintiff Damon Vass ("Plaintiff Vass") is an adult resident of the State of Maryland, Washington County.

4. Plaintiff Grant Geist ("Plaintiff Geist") is an adult resident of the State of Pennsylvania.

5. Plaintiff Rhonda Kenney ("Plaintiff Kenney") is an adult resident of the State of West Virginia.

6. Plaintiffs and similarly situated employees were employed as commissioned sales people at Defendants' various furniture stores located throughout the State of Maryland.

7. Plaintiffs institute this action for actual damages, statutory penalties, attorneys' fees and the costs of this action against Defendants.

8. Plaintiffs and similarly situated employees worked as commissioned employees for the Defendants.

9. Defendants employ workers who handle goods or materials that have moved or have been produced in interstate commerce.

10. Defendant RMS operates a for-profit business headquartered in Maryland and operates multiple furniture stores in Maryland and Virginia.

11. At all times relevant, Plaintiffs were W-2 employees of Defendants.

12. Plaintiffs were never independent contractors for Defendants.

13. Plaintiffs were not free to solicit their own clients at any time while employed by Defendants.

14. Plaintiffs did not pay for their own marketing and advertising related to client solicitation.

15. Plaintiffs were not required to purchase or pay for the equipment and tools necessary to perform their job.

16. Plaintiffs' work schedules were set by Defendants.

17. Plaintiffs were paid on a bi-weekly basis by Defendants.

18. Defendant Ayyad is the owner and operator of Defendant RMS.

19. Defendant Ayyad is the CEO of RMS.

20. Defendant RMS operates under the control of Defendant Ayyad.

21. Defendant Ayyad regularly visits his furniture stores throughout Maryland, including those stores where Plaintiffs were employed, to oversee their operation.

22. Defendant Ayyad personally supervises the operation of Defendant RMS's furniture stores.

23. Defendant Ayyad sets the employment policies and procedures by which Defendant RMS operates.

24. Defendant Ayyad sets the wage payment policies for Defendant RMS.

25. Defendant Ayyad has the authority to hire and fire RMS employees.

26. Upon information and belief, Defendant Ayyad exercises his authority to hire and fire employees of Defendant RMS.

27. The RMS employee handbook contains a letter to Defendants' employees entitled "Welcome to Regency Management Services, LLC" ("the Handbook Letter").

28. The Handbook Letter is signed by Defendant Ayyad.

29. The Handbook Letter identifies Defendant Ayyad as the "Owner/Founnder, CEO" of Defendant RMS.

30. The Handbook Letter has a picture of Defendant Ayyad in the upper right hand corner.

31. At all times relevant, Defendants were Plaintiffs' "joint employers".

## FACTUAL BACKGROUND

32. Plaintiff Greenwald was employed by Defendants as a commissioned sales person in Defendants' Ashley Furniture Store located in Hagerstown, Maryland, ("the Hagerstown Store") from approximately January 26, 2016 through January 25, 2017 and again from approximately February 18, 2017 through May 6, 2017.

33. Plaintiff Elliott was employed by Defendants as a commissioned sales person in the Hagerstown Store from approximately September 1, 2015 through May 2017 and again from approximately July 7, 2017 through November 24, 2017.

34. Plaintiff Vass was employed by Defendants as a commissioned sales person in the Hagerstown Store from approximately February 13, 2016 through February 20, 2017.

35. Plaintiff Geist was employed by Defendants as a commissioned sales person in the Hagerstown Store from approximately March 14, 2016 through July 9, 2016.

36. Plaintiff Geist was employed by Defendants as a commissioned sales person in Defendants' Ashley Furniture Store located in Frederick, Maryland, ("the Frederick Store") from approximately October 9, 2016 through November 21, 2016.

37. Plaintiff Kenney was employed by Defendants as a commissioned sales person in the Hagerstown Store from approximately May 2015 through May 2016.

38. Plaintiffs were all hired by Defendants as commissioned W-2 employees of Defendants.

39. Plaintiffs all had to complete an IRS W-4 form for Defendants when they were hired or re-hired.

40. Plaintiffs' paychecks contained deductions for unemployment benefits while they were employed by Defendants.

41. Plaintiffs were offered a standard benefit package including health insurance and a retirement plan through their employment with Defendants.

42. Upon information and belief, Defendants also included Plaintiffs and all other commissioned sales personnel as employees for purposes of calculating their unemployment insurance premiums while they worked for Defendants.

43. Upon information and belief, Defendants also included Plaintiffs and all other commissioned sales personnel as employees for purposes of obtaining a group rate for health insurance premiums that were offered to Plaintiffs and all other employees.

44.  Plaintiff Kenney participated in the retirement plan while employed with Defendants.

45. Upon information and belief, Plaintiffs and all other commissioned sales personnel, employed at any store owned by Defendants, were offered the same standard benefit package, including workers compensation benefits, health insurance and a retirement plan from 2012 to the present.

46. Upon information and belief, deductions were made for unemployment benefits from paychecks for all Plaintiffs and all other commissioned sales personnel, employed at any store owned by Defendants from 2012 to the present.

47. From 2012 through the present, Plaintiffs and all other commissioned sales personnel could receive unemployment benefits following their employment at any of Defendants' locations,

if they were eligible after leaving employment with Defendants, as a result of Defendants making unemployment deductions from their paychecks.

48. Plaintiffs and all other commissioned sales personnel, employed at any of Defendants' locations, were eligible and could receive COBRA continuation benefits after leaving employment with Defendants, from 2012 through the present, if they were eligible, signed up, and received health insurance with Defendants.

49. Plaintiffs and other commissioned sales personnel, were eligible and could receive workers compensation benefits at all of Defendants' locations, during or after leaving employment with Defendants from 2012 through the present, if they were eligible.

50. Defendants knew that all employees, including Plaintiffs and other commissioned sales personnel, remained W-2 employees after leaving employment with Defendants, from 2012 to the present, because Defendants offered COBRA continuation benefits, unemployment benefits, and workers compensation benefits to eligible employees.

51. Plaintiffs signed a written commission sales draw agreement entitled "Regency Management Services Commission Sales Agreement" ("the Commission Agreement").

52. The store manager of Defendants' store where Plaintiffs were employed also signed the Commission Agreement.

53. Under the terms of the Commission Agreement, Plaintiffs earned a draw calculated at an hourly rate, plus commissions.

54. Under the Commission Agreement, Plaintiffs' earned commissions at a rate of 5% for delivered sales of furniture and 20% on delivered warranty sales.

55. Under the terms of the Commission Agreement signed by the Plaintiffs, the Plaintiffs were at-will, W-2 employees, to be paid on a draw and commissions, with all payments made less standard deductions and withholdings.

56. Plaintiffs never agreed to be independent contractors or receive 1099 wages from Defendants.

57. Section III of the Commission Agreement states, "Once a COMMISSION is earned and payable, it will be paid, less standard deductions and withholdings, in accordance with the Company's standard payroll practices and procedures." (emphasis in original)

58. Defendants were aware of their obligation to pay Plaintiffs' and other commissioned sales personnel's wages as W-2 wages, less standard deductions and withholdings, as evidenced by the terms of the Commission Agreement and the fact that Plaintiffs' bi-weekly paychecks were paid as W-2 wages, less federal and state standard deductions and withholdings, during their employment.

59. The Commission Agreement created an enforceable contractual obligation under which Defendants were required to pay Plaintiffs, and all other commissioned sales personnel, their earned commissions, "less standard deductions and withholdings, in accordance with the Company's standard payroll practices and procedures."

60. As part of their job duties, Plaintiffs were required to sell mattresses to customers from third party mattress companies and would receive commissions on the sales of the mattresses from the mattress companies.

61. Defendants made Plaintiffs complete W-9's, that were preprinted with the name of the mattress company, showing that they were independent contractors and not employees of the mattress companies.

62. Upon information and belief, Defendant provided all other commissioned sales personnel W-9's preprinted with the name of the mattress company at all stores owned by Defendants from 2012 to the present.

63. During Plaintiffs' employment, Defendants paid Plaintiffs bi-weekly paychecks for draw and commissions.

64. During Plaintiffs' employment, Plaintiffs' bi-weekly paychecks were paid as W-2 wages, less federal and state standard deductions and withholdings.

65. Defendants issued Plaintiffs W-2s for their wages earned while employed by Defendants.

66. When Plaintiffs' employment with Defendants ended, if Plaintiffs were owed any additional commission payments, Defendants paid those commissions via 1099 payments, without taking out any federal and state standard deductions and withholdings.

67. When Plaintiffs had gaps in their employment, if Plaintiffs were owed any additional commission payments, Defendants paid those commissions via 1099 payments, without taking out any federal and state standard deductions and withholdings.

68. For example, on February 17, 2017, while Plaintiff Greenwald was not employed by Defendants, she received a commission check from Defendants, Check No. 5002443, in the amount of $1,590.82 that was issued as 1099 pay without any federal and state standard deductions and withholdings.

69. Plaintiff Greenwald resumed employment with Defendants on approximately February 18, 2017.

70. Plaintiff Greenwald's next paycheck, Check No. 5002735, issued on March 3, 2017 in the net amount of $528.69, was issued as W-2 wages, less federal and state standard deductions and withholdings.

71. During the period from approximately February 18, 2017 to May 6, 2017, while employed by Defendants, Plaintiff Greenwald's paychecks were issued less federal and state standard deductions and withholdings.

72. Plaintiff Greenwald's employment with Defendants ended for the second time on approximately May 6, 2017.

73. On May 26, 2017, after her employment with Defendants ended for the second time, Plaintiff Greenwald received a commission check from Defendants, Check No. 5003784, in the amount of $1,191.11 that was issued as 1099 pay without any federal and state standard deductions and withholdings.

74. The only deduction from Plaintiff Greenwald's May 26th check was in the amount of $267.51, to pay back Plaintiff Greenwald's outstanding draw.

75. Plaintiff Greenwald subsequently received additional commission checks issued as 1099 pay, including but not necessarily limited to: June 9, 2017 – Check No. 5003985; June 23, 2017 – Check No. 5004186; July 7, 2017 Check No. 5004383; July 21, 2017 – Check No. 5004573; August 18, 2017 – Check No. 5004974; September 1, 2017 – Check No. 5005169; September 15, 2017 – Check No. 5005363; and, October 13, 2017 – Check No. 5005742.All of the Plaintiffs received commission checks issued as 1099 pay following the end of their employment with Defendants, without any federal and state standard deductions and withholdings.

76. For example, on May 27, 2016, Plaintiff Kenney received a paycheck, Check No. 2023200 in the net amount of $948.19, with deductions for federal and state standard deductions and withholdings.

77. Plaintiff Kenney's employment with Defendants ended in approximately May 2016.

78. On June 24, 2016, Plaintiff Kenney received a commission check, Check No. 202873 in the amount of $429.00, issued as 1099 pay, without any federal and state standard deductions and withholdings.

79. Plaintiff Kenney subsequently received additional commission checks issued as 1099 pay, including but not necessarily limited to: July 8, 2016 – Check No. 2024207; September 2, 2016 – Check No. 5000348; September 16, 2016 – Check No. 500534; and, September 30, 2016 – Check No. 5000720.

80. For example, Plaintiff Geist's initial period of employment with Defendants ended on approximately July 9, 2016.

81. On August 19, 2016, Plaintiff Geist received a commission check, Check No. 5000042 in the amount of $59.25, issued as 1099 pay, without any federal and state standard deductions and withholdings.

82. Plaintiff Geist subsequently received additional commission checks issued as 1099 pay, including but not necessarily limited to: September 2, 2016 – Check No. 5000231.

83. Plaintiff Geist resumed employment with Defendants from approximately October 9, 2016 through November 21, 2016. During that period, Plaintiff Geist's paychecks were again issued as W-2 wages, less standard federal and state deductions and withholdings.

84. Following the end of Plaintiff Geist's employment for the second time, on approximately November 21, 2016, Defendants again began paying Plaintiff Geist's earned commission pay as 1099 pay, without any standard federal and state deductions and withholdings.

85. Plaintiff Geist subsequently received additional commission checks issued as 1099 pay, including but not necessarily limited to: January 20, 2017 – Check No. 5002082; March 03,

2017 – Check No. 5002630; March 17, 2017 – Check No. 5002817; and, April 28, 2017 – Check No. 5003394.

86. For example, Plaintiff Elliott's employment with Defendants ended for the first time in approximately May 2017.

87. For the pay period ending June 4, 2017, Plaintiff Elliott received a commission check for commission in the amount of $818.78, issued as 1099 pay, without any standard federal and state deductions and withholdings.

88. For example, Plaintiff Vass' employment with Defendants ended on approximately February 20, 2017.

89. On March 17, 2017, Plaintiff Vass received a commission check, Check No. 5002933, for commission in the amount of $890.05 issued as 1099 pay, without any standard federal and state deductions and withholdings.

90. Defendants, intentionally and willfully conducted a scheme whereby Defendants paid former employees owed commissions as 1099 payments in order to defraud the United States government and avoid paying Defendants' portion of Plaintiffs' and other similarly situated former employee's, FICA and other payroll and other federal taxes.

91. Defendants issued W-2s to Plaintiffs and all other commissioned sales personnel for both 2016 and 2017 at all locations in Maryland and Virginia.

92. Defendants willfully mispresented the amount of wages earned by all Plaintiffs on their W-2s for 2016 and 2017 by underreporting wages and excluding any commission amounts that were paid to them after they left employment with Defendants.

93. Defendants issued Plaintiff Greenwald a W-2 and 1099 for payments received in 2017.

94. The 1099 for 2017 that Defendants issued to Plaintiff Greenwald did not accurately reflect the total amount of 1099 pay Plaintiff Greenwald received from Defendant in 2017.

95. Defendants fraudulent issued Plaintiff Greenwald a W-2 in 2017 that willfully underreported her wages earned by excluding the 1099 wages that Defendants intentionally paid Plaintiff Greenwald to avoid paying payroll taxes, including FICA and FUTA taxes.

96. Defendants fraudulently issued Plaintiff Geist a W-2 in 2016 that willfully underreported his wages earned by excluding the 1099 wages that Defendants intentionally paid Plaintiff Geist to avoid paying payroll taxes, including FICA and FUTA taxes.

97. Defendants never issued Plaintiff Geist a 1099 in 2016 for commission payments fraudulently paid as 1099 wages.

98. Defendants fraudulently issued Plaintiff Geist a 1099 in 2017 that willfully misreported his wages earned as 1099 wages that Defendants intentionally paid Plaintiff Geist to avoid paying payroll taxes, including FICA and FUTA taxes.

99. Defendants fraudulent issued Plaintiff Vass a W-2 in 2017 that willfully underreported his wages earned by excluding the 1099 wages that Defendants intentionally paid Plaintiff Vass to avoid paying payroll taxes, including FICA and FUTA taxes.

100. Defendants never issued Plaintiff Vass a 1099 in 2017 for commission payments fraudulently paid as 1099 wages.

101. Defendants fraudulent issued Plaintiff Elliott a W-2 in 2017 that willfully underreported her wages earned by excluding the 1099 wages that Defendants intentionally paid Plaintiff Elliott to avoid paying payroll taxes, including FICA and FUTA taxes.

102. Defendants never issued Plaintiff Elliott a 1099 in 2017 for commission payments fraudulently paid as 1099 wages.

103. Defendants fraudulent issued Plaintiff Kenney a W-2 in 2016 that willfully underreported her wages earned by excluding the 1099 wages that Defendants intentionally paid Plaintiff Kenney to avoid paying payroll taxes, including FICA and FUTA taxes.

104. Defendants never issued Plaintiff Kenney a 1099 in 2016 or 2017 for commission payments fraudulently paid as 1099 wages.

105. Defendants' willful conduct is evidenced by the fact that Defendants' issued commission and other payments as 1099 pay immediately following Plaintiffs' and other similarly situated employees' termination dating back to 2012.

106. Defendants' willful conduct is evidenced by the fact that Defendants' required Plaintiffs and all other commissioned sales personnel, at all stores owned by Defendants, to complete W-9's for sales that were made on mattresses manufactured by third party manufacturers of the mattresses.

107. Defendants' willful conduct is evidenced by their failure to request that Plaintiffs and all other sales commissioned personnel complete W-9's, either while employed by or after they stopped working for Defendants, before issuing Plaintiffs and all other commissioned sales personnel "1099 pay".

108. Defendants' willful conduct is further evidenced by the fact that former commissioned sales personnel, including Plaintiffs, were never required to sign any IRS forms or any other documents stating that they were not W-2 employees, before receiving 1099 pay.

109. Defendants' willful conduct is further evidenced by the fact that former commissioned sales personnel, including Plaintiffs, were potentially eligible for unemployment compensation, COBRA coverage, and/or workers compensation benefits, after leaving

employment, while, at the same time, receiving 1099 pay for commissions, with no federal or state income taxes or deductions taken out.

110.  Defendants' willful conduct is further evidenced by the fact that if Plaintiffs and other former commissioned sales personnel returned to work for Defendants, their first paychecks following their return to work were issued as W-2 wages, less standard federal and state deductions and withholdings.

111.  Defendants' willful conduct is further evidenced by the fact that they alone profited by issuing Plaintiffs and all other commissioned sales personnel 1099 pay, without deductions and withholdings for FICA and FUTA or other federal or state income taxes, for earned commissions paid after they left employment with Defendants.

112.  Defendants' willful issuance of commission payments to Plaintiffs as 1099 payments breached their contractual obligation to pay Plaintiffs' earned commissions "less standard deductions and withholdings, in accordance with the Company's standard payroll practices and procedures."

113.  Defendants' willful issuance of commission payments to Plaintiffs as 1099 payments caused harm to Plaintiffs because Plaintiffs were required to pay additional taxes on the commissions, including Defendants' portion of the FICA, FUTA, and other federal and state income taxes.

114.  Defendants' willful issuance of commission payments to Plaintiffs as 1099 payments constituted an improper deduction of Plaintiffs' wages because Plaintiffs were required to pay additional taxes on the commissions, including Defendants' portion of the FICA, FUTA, and other federal and state income taxes.

115. Defendants willfully issued fraudulent W-2s to the Plaintiffs which failed to reflect the total payments made to the Plaintiffs for commissions paid after they left employment with Defendants.

116. Plaintiffs, by having to pay additional taxes on commissions paid after they left employment with Defendants, including Defendants' portion of the FICA and FUTA taxes, were denied access to wages that they would have had access to but for Defendants' willful issuance of the commission payments as 1099 pay.

117. Defendants hired Plaintiffs and similarly situated employees as at will, W-2 employees.

118. The Commission Agreement, entered into between the Plaintiffs and Defendants, required Defendants to pay Plaintiffs' and similarly situated employees' commissions as W-2 wages "less standard deductions and withholdings, in accordance with the Company's standard payroll practices and procedures."

119. Defendants, as Plaintiffs' employers, and in accordance with the Commission Agreement, had a duty to pay Plaintiffs' earned commissions, during and following their employment, as W-2 wages, less standard federal and state deductions and withholdings.

120. Defendants, by issuing Plaintiffs post-employment commission payments as 1099 wages, breached their duty to Plaintiffs.

121. Defendants' breach of their duty to Plaintiffs caused Plaintiffs harm because Plaintiffs were required to pay additional taxes on the at issue wages, including but not limited to Defendants' portion of the FICA, FUTA, and other federal and state income taxes.

122. Defendants never issued Plaintiffs commission reports during or after their employment with Defendants.

123. Upon information and belief, Defendants have not paid Plaintiffs all commissions earned during their employment with Defendants.

124. There is no bona fide dispute as to the wages Plaintiffs are owed as a result of Defendants' improper deductions.

125. There is no bona fide dispute as to the wages Plaintiffs are owed as a result of Defendants' failure to pay Plaintiffs all commissions owed.

126. Defendants did not act in good faith when issuing Plaintiffs post-employment commission payments as 1099 wages.

127. Plaintiffs never agreed to work for Defendants as 1099 independent contractors.

128. Plaintiffs never signed Form W-9's for Defendants before they received 1099 pay from Defendants. The IRS may impose a statutory penalty on any employer for every violation when it does not have employees sign W-9s before issuing paychecks as "1099 pay" without deductions and withholdings taken out.

129. Defendants never issued notices, including to Plaintiffs and/or any other commissioned sales personnel, that they would be considered independent contractors and their commissions payments issued following the end of their employment would be issued as 1099 pay, as required by Maryland Labor and Employment Code § 3-914.

130. On March 16, 2018, Defendants issued Plaintiff Greenwald a commission check in the gross amount of $7.50, minus deductions for Social Security and Medicare. (*See* Exhibit 1, Pl. Greenwald March 16, 2018 Paycheck)

131. Defendants' change of position by issuing unpaid commissions to Plaintiff Greenwald as W-2 wages minus applicable payroll deductions further evidences their willful, fraudulent

17

conduct in issuing Plaintiffs fraudulent tax information returns and making improper deductions from Plaintiffs' wages.

## JURISDICTION AND VENUE

132.  The jurisdiction of this Court is invoked due to the asserted violation of a federal statute and pursuant to 28 U.S.C. § 1331.

133.  Venue is appropriate in this jurisdiction because the unlawful events occurred in this district.

## VIOLATIONS OF THE LAW

### COUNT I – WILLFUL VIOLATIONS OF 26 U.S.C. § 7434

134.  All allegations of the Complaint are expressly incorporated herein.

135.  Defendants were responsible to submit accurate information returns for each Plaintiff to the IRS.

136.  Defendants willfully and knowingly filed false and fraudulent W-2 forms that underreported Plaintiffs' earned wages because, after Plaintiffs' employment ended, Defendants intentionally issued Plaintiffs' commission payments as 1099 pay, without any federal or state deductions or withholdings, which were not reported on Plaintiffs' W-2s.

137.  Defendants intentionally and knowingly issued Plaintiffs' commission payments as 1099 pay, and filed false and fraudulent W-2s with the IRS concerning Plaintiffs' employment wages, in order to save money and avoid paying payroll taxes, including the Defendants' portion of Plaintiffs' FICA and FUTA.

138.  Defendant Ayyad knowingly caused the filing of false W-2s through the creation and/or approval of Defendant RMS' wage, payroll, and tax policies.

139.  Defendant Ayyad knowingly failed to prevent and/or correct false W-2s from being filed

with the IRS, despite his duty to do so as CEO & Owner of Defendant RMS.

140.  Plaintiffs sue for redress under 26 U.S.C. § 7434.

141.  <u>Relief requested</u> – Plaintiffs, pursuant to 26 U.S.C. § 7434(b) request that: (a) Plaintiffs be awarded the greater of $5,000 or the sum of Plaintiffs' actual damages; (b) Plaintiffs be awarded their attorney's fees and costs; and (c) Defendants be enjoined from continuing to issue W-2s that underreport income earned as a result of commissions that are paid to commissioned sales personnel after they have left employment, without appropriate taxes and withholdings being deducted.

## *CLASS ACTION*

### *for WILLFUL FRAUDULENT TAX FILINGS under COUNT I*

### *AS TO DEFENDANTS RMS & AYYAD*

142.  All allegations of the Complaint are expressly incorporated herein.

143.  Plaintiffs seek class action status for similarly situated commissioned sales personnel who:

A)  worked for Defendants in Maryland, and/or Virginia, at any time during 2012 through the present date;

B)  received owed commission following the end of their employment issued as "1099 pay" without any federal or state deductions or withholdings; and

C)  were subject to intentional and knowing false wage statements by Defendants through filings of fraudulent W-2s.

144.  The class is so numerous that joinder of all members is impracticable because the number of workers exceeds 50.

145.  The class is geographically diverse across Maryland and Virginia and makes joinder impracticable.

146.  Class action is a superior method because these workers are numerous, unknown but easily identifiable through Defendants' records.

147.  Questions of law or fact common to the class, including the core claim that

  A) Each commissioned sales employee was issued "1099 pay" with no federal income taxes, FICA, or unemployment taxes deducted for commissions earned while employed by Defendants, but not paid until after they left employment.

148.  These core common facts are operative facts for determining claims and defenses, and predominate over any inconsequential differences in pay rates, location, and/or job titles are details that do not change the claims or defenses.

149.  Claims and defenses of the representative parties are typical of the claims or defenses of the class because (a) Defendants subjected all commissioned sales persons to the same illegal pay policies and, upon information and belief, continue to do so through the present date.

150.  The representative parties will fairly and adequately protect the interests of the class because the parties are similarly situated to the class and have identical claims and burdens of proof as the class.  Plaintiffs' litigation will further class interests.

151.  A class action furthers judicial economy because Plaintiffs' claims and class claims require the same proof and elicit the same defenses.

152.  A class action reduces the risk of an unjust result to nearly identical claims due to the vagaries of litigation.

153.  A class action permits a unified discovery and reduces burdensome duplicate discovery and discovery disputes.

154.  The class action applies to Count I of Plaintiffs' Complaint.

155.  This class action incorporates all remedies sought under Count I and any other remedy the

Court deems just.

**COUNT II – <u>IMPROPER DEDUCTIONS UNDER THE MWPCL</u>**

156. All allegations of the Complaint are expressly incorporated herein.

157. Defendants knowingly and willfully issued Plaintiffs' commissions, paid after Plaintiffs' employment ended but earned while they were employed by Defendants, as 1099 pay without any federal or state deductions or withholdings.

158. Plaintiffs never agreed to work as independent contractors or earn 1099 pay.

159. Defendants' own policies state all commissions owed "will be paid, less standard deductions and withholdings, in accordance with the Company's standard payroll practices and procedures."

160. Defendants' standard payroll practices violate the MWPCL because the deduction, that Plaintiffs and all others working at Defendants' Maryland stores be forced to pay Defendants' portion of federal and state taxes after they left employment with Defendants, was not authorized by the Plaintiffs, any law, or any regulation of a governmental unit.

161. Because Defendants issued Plaintiffs' commissions as 1099 pay, Plaintiffs were required to pay additional federal and state taxes on those wages, including Defendants' portion of the FICA and other federal and state taxes, deductions that were not allowed by the Commissioner, thereby denying Plaintiffs full consideration for the deduction that was made from the wages that had been earned.

162. Defendants' willful issuance of Plaintiffs' commissions as 1099 pay and the resulting increased tax liability paid by Plaintiffs constitutes an improper deduction of Plaintiffs' wages in violation of the MWPCL, Labor and Employment § 3-503.

163. There is no bona fide dispute as to the wages owed to Plaintiffs.

164. <u>Relief requested</u> - Plaintiffs request that: (a) Defendants be ordered to pay them all owed wages resulting from Defendants' improper deductions; (b) Plaintiffs be awarded treble damages; (c) that Plaintiffs be awarded pre- and post- judgment interest; (d) Defendants be enjoined from continuing their unlawful payroll practices that violate the MWPCL as detailed in this Count; and (e) Plaintiffs be awarded their attorney's fees and costs.

## COUNT III – <u>OWED COMMISSIONS UNDER THE MWPCL</u>

165. All allegations of the Complaint are expressly incorporated herein.

166. Defendants knowingly and willfully failed to pay Plaintiffs all of their owed commissions after Plaintiffs' employment ended but earned while they were employed by Defendants.

167. Defendants' own policies state all commissions owed "will be paid, less standard deductions and withholdings, in accordance with the Company's standard payroll practices and procedures."

168. Defendants' willful failure to pay Plaintiffs all of their owed commissions is in violation of the MWPCL, Labor and Employment § 3-505.

169. Over two weeks have passed since Defendants were required to have paid Plaintiffs all owed commissions.

170. There is no bona fide dispute as to the wages owed to Plaintiffs.

171. <u>Relief requested</u> - Plaintiffs request that: (a) Defendants be ordered to pay them all owed commission wages; (b) Plaintiffs be awarded treble damages; (c) that Plaintiffs be awarded pre- and post- judgment interest; (d) Defendants be enjoined from continuing their unlawful payroll practices that violate the MWPCL as detailed in this Count; and (e) Plaintiffs be awarded their attorney's fees and costs.

## COUNT IV - <u>NEGLIGENT ISSUANCE OF OWED WAGES</u>

172. All allegations of the Complaint are expressly incorporated herein.

173. Defendants hired Plaintiffs as at will employees.

174. Plaintiffs all signed the Commission Agreement which stated that the Plaintiffs were at-will employees to be paid on a draw and commissions, with all payments made less standard deductions and withholdings.

175. Section III of the Commission Agreement states, "Once a COMMISSION is earned and payable, it will be paid, less standard deductions and withholdings, in accordance with the Company's standard payroll practices and procedures." (emphasis in original)

176. During Plaintiffs' employment, Defendants paid Plaintiffs bi-weekly paychecks for draw and commissions.

177. During Plaintiffs' employment, Plaintiffs' bi-weekly paychecks were paid, less federal and state standard deductions and withholdings.

178. Defendants issued Plaintiffs W-2s for their wages earned while employed by Defendants.

179. When Plaintiffs' employment with Defendants ended, if Plaintiffs were owed any additional commission payments, Defendants paid those commissions via 1099 payments, without taking out any federal and state standard deductions and withholdings.

180. Defendants had a duty to pay all of Plaintiffs' owed wages as W-2 payments, less standard federal and state withholdings and deductions.

181. Defendants breached their duty by issuing commission payments paid to Plaintiffs after their employment ended as 1099 pay, without federal and state withholdings and deductions.

182. Defendants breach of their duty to Plaintiffs caused Plaintiffs harm because Plaintiffs were required to pay additional taxes on the at issue wages, including Defendants' portion of the FICA taxes.

183.  <u>Relief requested</u> - Plaintiffs request that Defendants be ordered to pay them: (a) all owed wages resulting from Defendants' breach, including any federal and state taxes that should have been paid by Defendants but for their breach, (b) any late fees and penalties levied by the IRS; and (c) any other remedy the Court deems appropriate.

## COUNT V – BREACH OF CONTRACT

184.  All allegations of the Complaint are expressly incorporated herein.

185.  In exchange for the offer to pay Plaintiffs' wages in accordance with the express terms of the Commission Agreement, Defendants received consideration in the form of the benefit of Plaintiffs' employment.

186.  Section III of the Commission Agreement states, "Once a COMMISSION is earned and payable, it will be paid, less standard deductions and withholdings, in accordance with the Company's standard payroll practices and procedures." (emphasis in original)

187.  Plaintiffs, by signing the Commission Agreement, all accepted the terms of the Commission Agreement, which was drafted by Defendants.

188.  The Defendants' store manager at the store where Plaintiffs were employed also signed the Commission Agreement on Defendants' behalf.

189.  The Commission Agreement created a contractual obligation under which Defendants were required to pay all commissions Plaintiffs earned, "less standard deductions and withholdings, in accordance with the Company's standard payroll practices and procedures."

190.  The contractual obligation to pay Plaintiffs commissions, "less standard deductions and withholdings" was applicable to commission payments made during and after Plaintiffs employment with Defendants.

191.  During Plaintiffs' employment, Defendants paid Plaintiffs bi-weekly paychecks for draw and commissions.

192.  During Plaintiffs' employment, Plaintiffs' bi-weekly paychecks were paid, less federal and state standard deductions and withholdings.

193.  Defendants issued Plaintiffs W-2s for their wages earned while employed by Defendants.

194.  When Plaintiffs' employment with Defendants ended, if Plaintiffs were owed any additional commission payments, Defendants paid those commissions via 1099 payments, without taking out any federal and state standard deductions and withholdings.

195.  Defendants breached their contractual obligation by issuing commission payments paid to Plaintiffs after their employment ended as 1099 pay, without federal and state withholdings and deductions.

196.  Defendants breach of their contractual obligation to Plaintiffs caused Plaintiffs harm because Plaintiffs were required to pay additional taxes on the at issue wages, including Defendants' portion of the FICA, FUTA, and other federal and state income taxes.

197.  <u>Relief requested</u> - Plaintiffs request that Defendants be ordered to pay them: (a) all owed wages resulting from Defendants' breach, including any federal and state taxes that should have been paid by Defendants but for their breach, (b) any late fees and penalties levied by the IRS; and (c) any other remedy the Court deems appropriate.

Respectfully submitted,

_____/s/_____

Richard Neuworth, Bar #01052
Lebau & Neuworth, LLC
606 Baltimore Avenue – Suite 201
Towson, Maryland 21204
tel. 443.273.1202
fax. 410.296.8660
rn@joblaws.net

_____/s/_____
Devan Wang, Bar #30211
Lebau & Neuworth, LLC
606 Baltimore Avenue – Suite 201
Towson, Maryland 21204
tel. 443.273.1207
fax. 410.296.8660
dw@joblaws.net


*Attorneys for the Plaintiffs*


## **REQUEST FOR JURY TRIAL**

Plaintiffs request that a jury of their peers hear and decide the claims asserted in this Complaint.


_____/s/_____
Devan M. Wang #30211

26