IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERTA GREENWALD, et al.,      :

    Plaintiffs,      :

v.      :      Civil Action No. GLR-18-227

REGENCY MANAGEMENT SERVICES,      :
LLC, et al.,
                                          :

    Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Regency Management Services, LLC[1] ("Regency") and Abdul Ayyad's Motion to Dismiss (ECF No. 15). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant in part and deny in part the Motion.

### I.    BACKGROUND[2]

Ayyad is the owner and Chief Executive Officer of Regency, which operates several Ashley Furniture stores in Maryland and Virginia. (Am. Compl. ¶¶ 10, 18–20, 32, ECF No. 7). Defendants employed Plaintiffs Roberta Greenwald, Elizabeth Elliott, Damon Vass, Grant Geist, and Rhonda Kenney as commissioned sales people at their furniture stores for various periods between 2015 and 2017.[3] (Id. ¶¶ 32–37). Plaintiffs were W-2 employees,

---

[1] In their Motion, Defendants indicate that Regency is an "Inc.," not an LLC.
[2] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 7) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).
[3] All Plaintiffs except for Geist worked exclusively at Defendants' Hagerstown, Maryland store location. (Am. Compl. ¶¶ 32–37). Geist also worked at Defendants'

and not independent contractors. (Id. ¶¶ 11–12). As part of their employment at Defendants' stores, Plaintiffs signed a "Regency Management Services Commission Sales Agreement" (the "Commission Agreement").[4] (Id. ¶ 51; Defs.' Mot. Dismiss ["Defs.' Mot."] Ex. 2 ["Comm'n Agmt."], ECF No. 15-2).[5] The Commission Agreement provided that Defendants would pay Plaintiffs an hourly wage plus commissions and that commissions would be paid "less standard deductions and withholdings, in accordance with [Regency's] standard payroll practices and procedures." (Am. Compl. ¶ 53; Comm'n Agmt. at 3). While Plaintiffs worked for Regency and Ayyad, they received bi-weekly paychecks with the required state and federal deductions and withholdings. (Am. Compl. ¶ 64). Defendants also issued Plaintiffs W-2s for wages earned. (Id. ¶ 65). When Plaintiffs' employment with Ayyad and Regency ended, Defendants paid Plaintiffs commissions owed via IRS 1099 forms, without taking any deductions or withholdings.

---

Frederick, Maryland location. (Id. ¶ 36). Plaintiffs' specific dates of employment with Defendants are as follows: Greenwald was employed from January 26, 2016 through January 25, 2017 and February 18, 2017 through May 6, 2017, (id. ¶ 32); Elliott was employed from September 1, 2015 through May 2017 and July 7, 2017 through November 24, 2017, (id. ¶ 33); Vass was employed from February 13, 2016 through February 20, 2017, (id. ¶ 34); Geist was employed from March 14, 2016 through July 9, 2016 and October 9, 2016 through November 21, 2016, (id. ¶¶ 35–36); and Kenney was employed from May 2015 through May 2016, (id. ¶ 37).

[4] Defendants attach Greenwald's Commission Agreement to their Motion. (Comm'n Agmt.). A Court may consider documents attached to a motion to dismiss, so long as they are integral to the complaint and authentic. See Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Here, Plaintiffs allege in the Amended Complaint that they signed the Commission Agreement, and they do not dispute the document's authenticity. Accordingly, the Court will consider the Commission Agreement when ruling on Defendants' Motion.

[5] Citations to the Commission Agreement refer to the pagination the Court's Case Management and Electronic Court Files ("CM/ECF") system assigned.

(Id. ¶¶ 67–89). As a result, Plaintiffs "were required to pay additional taxes on the commissions," thereby reducing their wages earned. (Id. ¶¶ 113, 116).

Defendants then "willfully misrepresented" the amount of wages Plaintiffs earned on their W-2s in 2016 and 2017 by "underreporting wages and excluding any commission amounts that were paid to them" after they left Defendants' employment. (Id. ¶ 92).[6] Defendants did so "to avoid paying the employer portion of the FICA, FUTA, and other federal and state income taxes on paychecks issued after Plaintiffs left employment." (Id. at 2). Defendants also "have not paid Plaintiffs all commissions earned during their employment with Defendants." (Id. ¶ 123).

Plaintiffs sued Regency and Ayyad on January 24, 2018. (ECF No. 1). On April 11, 2018, Plaintiffs filed an Amended Complaint. (ECF No. 7). In their five-Count Amended Complaint, Plaintiffs allege: willful violations of the Internal Revenue Code, 26 U.S.C. § 7434 (2018) (Count I);[7] improper deductions under the Maryland Wage Payment and Collection Law (the "MWPCL"), Md. Code Ann., Lab. & Empl. ["L & E"] § 3-503 (West 2018) (Count II); owed commissions under the MWPCL, L & E § 3-505 (Count III); negligent issuance of owed wages (Count IV); and breach of contract (Count V). (Am.

---

[6] Defendants also never issued Geist a 1099 for commission payments made in 2016, (Am. Compl. ¶ 97); never issued Vass a 1099 for commission payments made in 2017, (id. ¶ 100); never issued Elliott a 1099 in 2017 for commission payments made in 2017, (id. ¶ 102); and never issued Kenney a 1099 in 2016 or 2017 for commission payments made during those years, (id. ¶ 104).

[7] Plaintiffs bring Count I both individually and as a class action. (Am. Compl. ¶¶ 134–55).

Compl. ¶¶ 134–97). Plaintiffs seek compensatory damages, treble damages, injunctive relief, and attorney's fees and costs. (Id. ¶¶ 141, 164, 171, 183, 197).

Regency and Ayyad now move to dismiss all counts against them for failure to state a claim upon which relief may be granted. (ECF No. 15). Plaintiffs filed an Opposition on June 19, 2018. (ECF No. 18). On June 29, 2019, Regency and Ayyad filed a Reply. (ECF No. 19).

## II.  DISCUSSION

**A.  Standard of Review**

The purpose of a motion made under Federal Rule of Civil Procedure 12(b)(6) is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank

4

of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B. Analysis**

Defendants contend that the Court should dismiss all Counts against them for failure to state a claim. The Court addresses each Count in turn.

**1. Internal Revenue Code - 26 U.S.C. § 7434(a) – Count I**

Defendants maintain that 26 U.S.C. § 7434(a) only applies to willful and fraudulent misrepresentations of the amount of wages; it does not apply to the misclassification of W-2 wages as 1099 independent contractor income. Plaintiffs counter that they do not allege that they were misclassified. Rather, they allege that Defendants fraudulently underreported their wages on their W-2s, and therefore they state a claim under § 7434(a). The Court agrees with Plaintiffs.

5

Section 7434(a) provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

Although no United States Court of Appeals has addressed the issue, some district courts have concluded that § 7434(a) "creates a private cause of action only where an information return is fraudulent with respect to the amount purportedly paid to the plaintiff." Liverett v. Torres Advanced Enter. Sols. LLC, 192 F.Supp.3d 648, 653 (E.D.Va. 2016); see Guerra v. Teixeira, No. TDC-16-0618, 2018 WL 3756716, at *8 (D.Md. Aug. 8, 2018) (agreeing with "the Liverett court's thorough analysis"); Tran v. Tran, 239 F.Supp.3d 1296, 1298 (M.D.Fla. 2017) ("[T]he payor's filing of the wrong form establishes no liability under Section 7434 unless the form willfully misstates the payee's income."). As a result, these courts concluded that § 7434(a) "provides no remedy for a person incorrectly classified as an independent contractor." Tran, 239 F.Supp.3d at 1298; see Guerra, 2018 WL 3756716, at *8 (concluding that § 7434 "is not a proper vehicle by which to challenge the misclassification of an employee as an independent contractor").

In this case, by contrast, Plaintiffs do not allege that Defendants misclassified them as independent contractors. Rather, they plead that they were W-2 employees during their employment, and that Defendants issued them 1099s for commission payments after they left their employment so Defendants could "avoid paying the employer portion of the FICA, FUTA, and other federal and state income taxes on paychecks issued after Plaintiffs left employment." (Am. Compl. at 2). Plaintiffs allegations also differ from those in

Liverett, Tran, and Guerra in another crucial way: they plead that Defendants issued them W-2s for 2016 and 2017 that "willfully misrepresented" their wages because they did not include the 1099 payments Defendants made to them after their employment ended. (Id. ¶ 92). Plaintiffs specifically allege that Defendants underreported their wages by not reporting all wages earned. (Id. ¶¶ 95–96, 98–99, 101, 103). Although Plaintiffs' allegations of underreporting stem from the fact that the Defendants misclassified their post-employment commission payments, Plaintiffs nonetheless allege that the amounts Defendants reported were incorrect—and that this misreporting was willful. They further allege that Defendants willfully underreported the amounts on their W-2s, 1099s, or both in an effort defraud tax authorities by reducing their tax obligations. (Id. ¶¶ 90, 92, 95–96, 98–99, 101, 103). Plaintiffs' allegations, therefore, fall within the ambit of § 7434(a).[8] See Czerw v. Lafayette Storage & Moving Corp., No. 16-CV-6701-FPG, 2018 WL 5859525, at *3 (W.D.N.Y. Nov. 9, 2018) (concluding that the plaintiff had stated a claim under § 7434(a) where the defendants, to defraud tax authorities and decrease their tax liability, misclassified the employee as an independent contractor for a tax year despite treating him as a W-2 employee during his employment).

In sum, at this stage in the litigation, Plaintiffs' allegations, viewed in a light most favorable to them, permit the Court to plausibly infer that Defendants fraudulently

---

[8] In Defendants' Reply, they first raise the argument that Plaintiffs who did not receive 1099s do not allege the circumstances surrounding the missing 1099 forms with the particularity required under Rule 9(b). Defendants misunderstand Plaintiffs' allegations. Plaintiffs do not bring claims based on the fact that they did not receive 1099s. Rather, Plaintiffs allege that Defendants willfully underreported their wages on their W-2s, 1099s, or both, which, as discussed above, is sufficient to state a claim under § 7434(a).

underreported Plaintiffs' wages on their W-2s, which is sufficient to state a claim under § 7434(a). Accordingly, the Court will deny Defendants' Motion as to Count I.

### 2. MWPCL – Counts II & III

Plaintiffs allege violations of § 3-503 and § 3-505 of the MWPCL. The Court addresses each MWPCL provision in turn.

#### a. § 3-503

Plaintiffs argue that by forcing Plaintiffs to pay the state and federal taxes that Defendants were required to pay, Defendants indirectly made an unauthorized deduction from Plaintiffs' wages, thereby violating L & E § 3-503. Defendants counter, based on the plain language of L & E § 3-503, that they did not make any deductions from Plaintiffs' wages. The Court agrees with Defendants.

Section 3-503 of the MWPCL prohibits employers from making unauthorized deductions. Section 3-503 specifically provides that an employer may take a deduction from an employee's wages if the deduction is: "(1) ordered by a court of competent jurisdiction; (2) authorized expressly in writing by the employee; (3) allowed by the Commissioner because the employee has received full consideration for the deduction; or (4) otherwise made in accordance with any law or any rule or regulation issued by a governmental unit." L & E § 3-503.

The MWPCL does not define "deduction," and there is scant case law interpreting this term. Even so, the cases concluding that an employer made an unauthorized deduction from an employee's wages all involve just that—the employer making the deduction. See

Guerra, 2019 WL 330871, at *15 (concluding that the employer's deduction from an employee's wages for the cost of tools and equipment without the employee's permission is a violation of L & E § 3-503); Jones v. Way of Hope, Inc., No. L-08-1517, 2009 WL 3756843, at *3 (D.Md. Nov. 6, 2009) (concluding that the employer's deduction from an employee's wages for room and board without the employee's permission is a violation of L & E § 3-503).

In this case, by contrast, Plaintiffs allege that because Defendants failed to make required deductions, Plaintiffs had to pay Defendants' portion of state and federal payroll taxes after they stopped working for Defendants. Plaintiffs do not allege that Defendants made unauthorized deductions. Further, Plaintiffs do not cite any cases, and the Court finds none, to support the proposition that forcing employees to pay their employer's portion of payroll taxes constitutes an unauthorized deduction under L & E § 3-503.

Thus, the Court concludes that Plaintiffs fail to state a claim under MWPCL § 3-503. Accordingly, the Court will grant Defendants' Motion as to Count II.

### b. § 3-505

MWPCL § 3-505 states that an employer "shall pay an employee . . . all wages due for work that the employee performed before the termination of the employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated."

Plaintiffs allege "[u]pon information and belief" that Defendants "have not paid Plaintiffs all commissions earned during their employment with Defendants," (Am. Compl. ¶ 123), and therefore Defendants owe them commissions earned under § 3-505 of

the MWPCL. Defendants contend that Plaintiffs rely solely on statements of "information and belief" and that this is insufficient to plausibly state a claim. Although Defendants are correct that Plaintiffs cannot rely solely on allegations couched in this manner, Plaintiffs nevertheless plausibly state a claim for violations of § 3-505 of the MWPCL.

In support of their argument, Defendants cite Davidson v. Sarnova, Inc., No. JKB-17-1067, 2017 WL 5564654, at *4 (D.Md. Nov. 20, 2017). Davidson, however, notes that alleging "upon information and belief" "is a permissible way to indicate a factual connection that a plaintiff reasonably believes is true but for which the plaintiff may need discovery to gather and confirm its evidentiary basis." Id.; see Fed.R.Civ.P. 11(b), Advisory Committee's Note to 1993 Amendment. The Davidson Court further noted that "allegations in this form have been held to be permissible, even after the Twombly and Iqbal decisions." 2017 WL 5564654, at *4 (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed.)). Still, "a plaintiff may not rely exclusively on conclusory allegations of unlawful conduct, even where alleged 'upon information and belief.'" Id. Plaintiffs do not do so in this case.

Plaintiffs allege throughout the Amended Complaint that Defendants owe them wages, commission payments, and deductions they were forced to pay because Defendants did not make them. (Am. Compl. ¶¶ 66, 73, 75, 84, 87, 90, 105, 113). In addition, it is reasonable to infer that all records of Plaintiffs' wages, payments, and work performed are in Defendants' control because they were Plaintiffs' employers and, as a result, must keep records of such information.

The Court, therefore, concludes that Plaintiffs plausibly state a claim for violations of § 3-505 of the MWPCL. Accordingly, the Court will deny Defendants' Motion as to Count III.

### 3. Negligent Issuance of Owed Wages – Count IV

Plaintiffs plead that Defendants are liable for "negligent issuance of owed wages" because they were not paid according to the Commission Agreement's provisions. (Am. Compl. ¶¶ 175, 177, 181). Defendants contend that Maryland courts have not recognized such a cause of action. The Court agrees with Defendants.

Plaintiffs cite two principal cases in support of their assertion that Maryland recognizes a cause of action for negligent issuance of owed wages: Jacques v. First National Bank of Maryland, 515 A.2d 756 (Md. 1986), and Shofer v. Stuart Hack Co., 595 A.2d 1078 (Md. 1991).[9] These cases are inapposite.

Jacques did not recognize a cause of action for negligent issuance of owed wages and is readily distinguishable from this case. In Jacques, the Court of Appeals of Maryland held that a bank which agreed to process a loan application owed the applicants a duty of care in processing the application. 515 A.2d at 762. In imposing a duty of care on the bank,

---

[9] Plaintiffs also cite Lubore v. RPM Associates, Inc., 674 A.2d 547 (Md.Ct.Spec.App. 1996), for the proposition that the Court of Special Appeals of Maryland extended a duty of care to at-will employees. Id. 558. Lubore involved an employee who brought a negligent misrepresentation claim against his former employer for allegedly making material misrepresentations during pre-employment negotiations. Id. at 558–59. The court concluded that the plaintiff alleged sufficient facts to establish that his former employer owed him a duty of care to refrain from making negligent misrepresentations. Id. at 559. Plaintiffs overlook the fact that the law must first recognize a cause of action that contemplates a duty. In Lubore, that cause of action was negligent misrepresentation.

11

the court emphasized that the applicants were "particularly vulnerable and dependent" upon the bank's exercise of reasonable care because the contract for purchase of their home obligated them to accept "whatever loan they could obtain at the agreed rate of interest," and that the bank was aware of this fact. Id. at 762–63. As a result, the applicants would have to proceed to settlement on whatever loan terms the bank offered or forfeit their $10,000.00 deposit. Id. at 763. The court also emphasized the nature of the business—one that had a "public calling" and involved dealings with professionals whose occupations required a "peculiar skill"—weighed in favor of imposing a tort duty on the bank. Id. Here, Defendants are employers who own and operate a furniture store, which is not a profession with a public calling or one that requires a peculiar skill. Even if the Court were to conclude that Defendants' profession weighed in favor of imposing a tort duty, nothing in the facts as alleged establish a relationship between Plaintiffs and Defendants that made Plaintiffs "particularly vulnerable and dependent" upon Defendants' exercise of due care. Id. at 762–63. Thus, Jacques does not support a cause of action for negligent issuance of owed wages.

The Court also does not read Shofer to create or permit a cause of action for negligent issuance of wages. In Shofer, the Court of Appeals concluded that ERISA did not preempt the plaintiff's state-law professional malpractice action against a retirement plan consultant for failing to properly advise the plaintiff of the tax implications of withdrawing money from his retirement account. 595 A.2d at 1083–86. The consultant did not miscalculate the plaintiff's taxes; he allegedly failed to advise the plaintiff of the income tax consequences of borrowing money from his retirement plan. Id. at 1080. Thus, Shofer did not recognize a cause of action for negligent issuance of owed wages.

In short, neither of these cases recognize a cause of action for negligent issuance of wages, and the Court finds no other case that does. The Court, therefore, concludes that Plaintiffs fail to state a claim for negligent issuance of owed wages. Accordingly, the Court will grant Defendants' Motion as to Count IV.

### 4. Breach of Contract – Count V

Plaintiffs allege that Defendants breached the Commission Agreement because they failed to pay commissions "less standard deductions and withholdings," (Am. Compl. ¶ 57; Comm'n Agmt. at 3), and because they issued Plaintiffs 1099s that did not include the required deductions and withholdings. Defendants point to language in the Commission Agreement, which states, "I understand that this is not a contract for employment . . . ." (Comm'n Agmt. at 2). Based on this language, Defendants argue that the Commission Agreement is not an enforceable contract. Defendants are mistaken.

While the Commission Agreement expressly states that it is "not a contract for employment," (id.), it does not state that the Commission Agreement is not a contract. The Commission Agreement "specifies the manner and method" by which an employee "will be compensated while employed by [Regency]." (Id.). So, although the Commission Agreement is not an employment contract, it is still a contract—and it imposed an obligation on Defendants to pay Plaintiffs commissions "less standard deductions and withholdings." (Id. at 3). Plaintiffs allege that Defendants breached this obligation when they issued Plaintiffs commission payments as 1099 payments without the required deductions and withholdings. (Am. Compl. ¶ 112). Plaintiffs' allegations are sufficient to state a breach of contract claim. See Belyakov v. Med. Sci. & Computing, 86 F.Supp.3d

430, 437 (D. Md. 2015) ("To state a claim for breach of contract, the plaintiff must show that the defendant owed him a contractual obligation and that the defendant breached that obligation." (quoting Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001))).

Thus, the Court concludes that Plaintiffs sufficiently state a breach of contract claim. Accordingly, the Court will deny Defendants' Motion as to Count V.

In sum, Plaintiffs fail to state a claim under MWPCL § 3-503 and for negligent issuance of wages owed. Plaintiffs, however, sufficiently state claims for violations of IRS Code § 7343(a), MWPCL § 3-505, and breach of contract. Accordingly, the Court will grant in part and deny in part Defendants' Motion.

### III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Regency and Ayyad's Motion to Dismiss (ECF No. 15). A separate Order follows.

Entered this 5th day of March, 2019.

/s/
George L. Russell, III
United States District Judge